## SARAH J. FEELY v. S. G. HOOVER ET AL

### APPEAL BY THE DEFENDANTS FROM THE COURT OF COMMON PLEAS OF CLARION COUNTY.

Argued October 11, 1889—Decided November 4, 1889.

1. The purchase by an attorney of real estate at a sheriff's sale, after inducing a competing bidder to withdraw, but exclusively in the interest of his client and without any agreement or arrangement for the benefit of the judgment defendant, will not create a trust for the latter.
2. The surrender of a deed to the grantor and the execution and delivery by him of a new deed for the same property, of the same date of the former, to a new grantee by direction of the first grantee, will be inoperative as against the lien of a judgment entered against the first grantee while he held the title.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 201, October Term 1889, Sup. Ct.; court below, No. 169 April Term 1887, C. P.

On March 4, 1887, Miles C. Feely and Sarah J., his wife, in right of said Sarah J. Feely, brought ejectment against S. G. Hoover and S. W. Hoover, for forty acres of land in Toby township. Issue.

At the trial on August 12, 1889, the facts appearing were in substance as follows: On August 29, 1882, upon a judgment for $1,050 in favor of the Clarion Masonic Lodge against Albert W., Miles C., William A. and Angeline Feely, the interests of the defendants in a tract of land and two town lots were sold to Mr. W. W. Barr, the attorney for the judgment plaintiff, for the sum of $75. On a previous day at which the sale was advertised, the property had been bid up to over $500,

Charge of Court below.

but after an adjournment Mr. Barr had induced the bidder to withdraw his bid, and at the day of sale there was no competition. The $75 at which the property was knocked down to Mr. Barr but little exceeded the costs on the writ. There were other unsatisfied liens against the interests of the defendants, and at the time of the sale Mr. Barr supposed the interests sold were not worth more than the judgment in his charge. After the sale, Mr. Barr's client was willing to give up the land upon being paid the amount of its judgment and interest, and an arrangement was made by which, inter alia, one portion of the land was to be conveyed by Mr. Barr to a purchaser for an amount sufficient to discharge the judgment indebtedness, the town lots to be conveyed to a sister, and forty acres of the land, the parcel in dispute, to Miles C. Feely and William A. Feely. This was the arrangement as Mr. Barr understood it at the time, and in carrying it out, a deed was made by him on September 4, 1882, to Miles C., and William A. Feely, for the land in dispute, which deed was delivered to William A. Feely, for himself and brother, on December 12, 1882. Some time afterwards, William A. Feely, brought the deed back to Mr. Barr, saying that "it was not the way they wanted it."

Subsequently William and Miles both requested him to make a new deed to Mrs. Sarah J. Feely, the wife of Miles C. Feely. A deed was drawn, copied from the former deed, dated September 4, 1882, acknowledged August 27, 1884, and delivered. The consideration named in it was $1,200, but no part of it was paid. In the meantime, however, to wit, on June 27, 1884, S. H. Hoover had entered a judgment for $159.66 against Miles C., William A. and A. W. Feely. On this judgment the land in dispute on April 21, 1885, was sold at sheriff's sale to S. G. Hoover for $450, and sheriff's deed delivered. At this sale Mrs. Sarah J. Feely had given notice to bidders alleging title in her, and that it had vested "prior to the entry of the Hoover judgment."

The court, WILSON, P. J., after indicating the case made by the pleadings and the abstracts of title, charged the jury:

The plaintiff, in support of the abstract of title, read within your hearing, offered evidence to support what was therein contained; as also did the defendants offer the evidence and

Charge of Court below.

papers specified in their abstract of title.    Both sides concede that the determination of this case must be settled by the court on the questions of law involved, and the jury will be guided by our instructions.

The plaintiff requests the court to charge:

1. That under the act of assembly of April 22, 1856, [P. L. 533,] all declarations or creations of trusts in lands are required to be in writing and signed by the party holding the title therefor, otherwise they are invalid; excepting resulting trusts such as the law implies.

Answer: Affirmed.

2. That resulting trusts can be created only by the payment of a part of the purchase money by the party claiming to be cestui que trust, or by fraud at the time of the purchase on the part of the purchaser at sheriff's sale; and both these requirements being entirely wanting in the purchase by W. W. Barr, the evidence in this case fails to establish a resulting trust in him.

Answer: Affirmed.[1]

3. There is nothing in the testimony of W. W. Barr given in this case, whereby any title, legal or equitable, to the land in dispute became vested in Miles C. Feely, W. A. Feely, and A. W. Feely, which could be taken in execution by their judgment creditor, S. W. Hoover, and the sale on his judgment of the land in controversy, passed no title in the same to the purchaser, S. G. Hoover, the defendant in this case.

Answer: Affirmed.[2]

4. Where a creditor purchases his debtor's land at sheriff's sale, and afterwards sells a part of the land so as to realize the whole of his debt, he may convey the balance of the land to the debtor's wife, and such transaction, being a gratuity, is not fraudulent as to creditors.

Answer: Affirmed.

5. There is nothing in the transaction by which W. W. Barr conveyed the land in dispute to Sarah J. Feely, which operated prejudicially on the right of S. W. Hoover or S. G. Hoover, or gives them or either of them occasion to complain of the transaction, and the plaintiff is entitled to recover as against them the land in dispute.

Answer: Affirmed.

6. That under the law and evidence in this case, the verdict of the jury must be for the plaintiff.

Answer: Affirmed.[3]

The defendants' counsel request the court to charge the jury,

1. That if the jury believe the testimony of W. W. Barr, the verdict must be for defendant.

Answer: Refused.[4]

The jury returned a verdict for the plaintiff for the land described in the writ, and judgment being entered thereon, the defendants took this writ, assigning as error:

1–3. The answers to the plaintiff's points.[1 to 3]

4. The answer to the defendants' point.[4]

*Mr. B. J. Reid* (with him *Mr. A. B. Reid*), for the appellants.

Counsel cited, (1) upon the position that Mr. Barr, under the evidence, was a trustee ex maleficio: Cook v. Cook, 69 Pa. 445; Squires's App., 70 Pa. 266; Houser v. Lamont, 55 Pa. 311; Roth v. Humrich, 76 Pa. 128. (2) That the deed made by Mr. Barr to Sarah J. Feely was a nullity, as against the Hoover judgment: Cravener v. Bowser, 4 Pa. 262; Wiser v. Allen, 92 Pa. 322; Rifener v. Bowman, 53 Pa. 313; Barncord v. Kuhn, 36 Pa. 389.

*Mr. John W. Reed* (with him *Mr. Henry J. Wilson*), for the appellee.

Counsel cited, as to resulting trust: Barnet v. Dougherty, 32 Pa. 371; Kellum v. Smith, 33 Pa. 164; Kistler's App., 73 Pa. 393; McGinity v. McGinity, 63 Pa. 38; Nixon's App., 63 Pa. 279; Lingenfelter v. Richey, 62 Pa. 123; Plumer v. Guthrie, 76 Pa. 441; Hayes's App., 123 Pa. 110; Kimmel v. Smith, 117 Pa. 183; Zuver v. Clark, 104 Pa. 222; Kimble v. Smith, 95 Pa. 69; Harlan v. Maglaughlin, 90 Pa. 293; Winch v. James, 68 Pa. 297.

OPINION, MR. JUSTICE MITCHELL:

There was no room in this case for the application of the doctrines of resulting trusts, or trusts ex maleficio. The evidence is entirely clear that Capt. Barr made the purchase exclusively in the interests of his clients, the masonic lodge, and

without any previous agreement or arrangement for the continuance of an interest in any of the Feelys. His testimony is uncontradicted, and it establishes that he expected to have to buy in the land for his clients, and that he considered it worth about the amount of the debt, and therefore that there would be nothing left for the debtors. His adjournment of the sale, and securing the withdrawal of Arnold's bid, was also solely in the interest of his clients, there being a prior judgment against the same defendants, or at least some of them, open on the docket, which Albert Feely said was paid; but, in the absence of personal knowledge of that fact, Barr, as a prudent lawyer, desired to avoid the risk of bidding the property up to cover the prior judgment, and having to pay the money into court where it might ultimately be awarded to the prior creditor. In all this there was nothing on which to found the notion of a trust of any kind for the Feelys.

Having acquired the title by purchase at the sheriff's sale, Barr seems to have been convinced that the land was more valuable than he had thought, and, as neither he nor his clients desired anything more than the payment of their debt, he was willing to carry out the proposed arrangement, by which the outstanding interests of the other members of the Feely family should be conveyed to him, and the land and its proceeds disposed of to the several parties in accordance with the agreement. This was entirely competent and legal for him to do, and had the deed to Mrs. Sarah J. Feely been made and delivered at that time no question as to its validity could have arisen: Winch v. James, 68 Pa. 297. But the difficulty is that the deed was not so made, nor is there any evidence that such was the agreement at the time. On the contrary, the deed was made to Miles and William Feely, and handed to William on December 12, 1882. There is no doubt that in so doing Barr was carrying out the agreement as he understood it, and there is no evidence that he was not right in such understanding, except the fact that "after a little time," as Barr says,—"I cannot tell how long,—William brought the deed over to me, and said, 'That deed was not the way they wanted it.'" This may mean either that it was not in accordance with the agreement at the time it was made, or not in accordance with the present desire of the parties; and the rest of Barr's testimony

makes it clear that the latter was the real meaning. "I told him," he says, "that was the way I understood it was to be made, and I did not care about making another deed, unless somebody would pay me for it; and he went.away, and after a while he or some one came to me, and said if I would make a deed either he or some one would pay me for it; and then I made a deed, and delivered it to Miles." This was the deed to Sarah J. Feely. Just when it was made is not clear. It was dated back to September, 1882, the date of the previous deed to William and Miles, but was not delivered until after August 27, 1884. In the mean time the Hoover judgment had been entered, and was a lien on Miles and William Feely's interest in the land, whatever that was. Whether they had any interest depends on whether or not the deed to them was delivered.

That the leaving of the deed with William was intended by Barr as a delivery does not admit of doubt, and there is no evidence that the other parties refused to receive it as such. On the contrary, they did not return it immediately,—all the evidence is that of Barr that it was "after a little time; I cannot tell how long;" which may mean a day, or a week, or a month,—and when they did bring it back it was not with a clear declaration that it was not according to agreement, but only that it was "not the way they wanted it;" which, as already said, might, and under the circumstances must, be taken to mean that it was not according to their present wishes. They left the matter in this indefinite condition for some time. How long is again in doubt, as Barr says, only, "he went away, and after a while he or some one came, and said if I would make a deed," etc.; but, whatever the time was before they came back to make positive arrangements for a new deed, they did not follow it up, and get the deed, until August, 1884, more than a year and a half after the handing of the first deed to William, and two months after the entry of the Hoover judgment had made the matter urgent. Under such evidence there is not the slightest doubt that the leaving of the deed with William was a delivery; that the title was in William and Miles at the time of the entry of the Hoover judgment; and, whether or not a mere surrender of their deed, and the making of a new one by their grantor, Barr, to Sarah J. Feely, could, under any cir-

cumstances, pass the legal title to her, it is quite clear that it could not do so as against the lien of the creditor's judgment which had previously attached.

The defendants' point should therefore have been affirmed, and the verdict directed for defendants.

Judgment reversed.